[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of a marriage brought by the plaintiff wife against the defendant husband. The parties were married on May 23, 1986, in Darien, Connecticut. They separated in August of 1989 and this action was brought in September of 1989.
There are two children issue of this marriage, Katyn P. Pfister, born April 16, 1988, and Robert M. Pfister, born August 14, 1989. There are no other children issue of this marriage. CT Page 1608
Both parties have resided in this state for more than one year prior to the beginning of this action. No state aid has been paid to any of the parties hereto.
The marriage has broken down irretrievably, and the parties have so stipulated.
The evidence disclosed a marriage in which the parties had very little time together. The plaintiff's parents lived in Darien and were members of a country club. The plaintiff spent three to four days a week there before leaving the defendant in 1988 and remaining there for six months. The defendant visited her and the child from time to time, but despite his request that she return home, she did not do so until she found she was pregnant with the second child. She returned home, had the second child and left two weeks after that child's birth, again to return to her parents' home where she is presently living.
While the plaintiff recounted episodes of the defendant's anger and rage, in the context of the plaintiff's behavior and apparently preferring to live with her parents than to live with her husband, the defendant's reaction is understandable. There was no evidence of any physical abuse.
The plaintiff is a school teacher on leave from Stamford Board of Education where she had been employed for ten years. She has AB and MA degrees and was earning $33,150.00 in 1988. Had she worked in 1989 she would have received $39,067.00. She testified that she expects to return in September of 1990.
The defendant is a high school graduate with one year of college. He has worked in the construction business since age 14 and most recently as a carpenter. He was laid off in October of 1989 from the Shaw Construction Company. However, he describes himself as an independent contractor doing business under the name of Albert Pfister Construction Company. Following his "lay off" and within a month after the divorce was brought by the plaintiff, the defendant also brought suit for divorce, and at the same time, decided to have his ankle operated on thus disabling him for an indefinite period of time according to his testimony. However, there is no medical evidence to support his claim of disability at the present time or even in the past. He certainly did not appear disabled in the courtroom.
For the year 1989 until his separation from the Shaw Construction Company in October, he earned $48,200.00 gross. See exhibit A. His deductions consisted primarily of car and CT Page 1609 truck expenses and depreciation of equipment.
He testified he had worked on two small jobs since the last court hearing earning a total of $1,000.00. His affidavit indicates he has been able to pay his expenses and has not paid the mortgage or car insurance in accordance with the court's orders. He has been in arrears of his support order of $50.00 per week as well. However, he has failed to include in his affidavit his IRA in the amount of $4,000.00.
The defendant is presently living in the marital home.
While his income may be negligible, that is, in part, due to his voluntary decision to have his ankle operated on and perhaps, in part, due to the decline in the construction business in this area. He does have some assets; to wit: a 1987 Ford truck with no outstanding loan on it which he values at $7,000.00. He also has a 1981 Porsche and a 1986 Laser 22 ft. boat which he uses for a tax deduction as a second home although the boat has been parked in the yard of the marital home for the past three years. There are outstanding loans on both the boat and the Porsche which he appears to be reducing with regular payments.
The plaintiff is living with her parents and has used her IRA of some $2,000.00 in part for living expenses. She claims she needs $250.00 a week for her present expenses. She has borrowed some $15,000.00 from her father for legal fees and expenses. As noted above, she has testified that she intends to return to work in the fall, and she also plans to move out of her parents' home.
The requests for relief filed by both part indicates some areas of agreement:
1. They agree that the house which is presently under contract with a binder for sale be sold and the net proceeds divided equally. However, the defendant wants to have the arrearages in the mortgage deducted from the gross thus discharging his obligation to have paid them. In view of his assets listed above, the court can find no reason to do that.
2. The parties have agreed that the Honda be retained by the plaintiff with a concomitant obligation to be responsible for any outstanding loans.
3. The defendant to retain the Porsche and boat also with the obligation to pay the loans on them. CT Page 1610
4. That each be responsible for the bills listed in their respective financial affidavits.
There is no agreement on the distribution of the furnishings and the house, and the court believes that should be referred to family relations for determination.
On the question of alimony, the defendant asks that neither party pay alimony, but the plaintiff requests a $1.00 a year for five years.
On the question of custody, since there was no agreement, the court under the Emerick case may order only sole custody. While the defendant has requested joint custody, after being informed that the court did not have power to grant that unless the plaintiff agreed, he made no request for sole custody. In any event, the children have been with their mother for the most part since their birth, both at her parents' house and at the marital home. They appear to be doing well, and no evidence was offered indicating there was any problem with the mother's care of the children, nor did counsel for the children suggest that custody should be given to the defendant. In fact, the recommendation was that there be more friendly interaction between the plaintiff and the defendant with respect to visitation, for example, as well as other things which had to do with the children's welfare.
Under all the circumstances, it appears to the court that it is in the best interest of the children to be in the custody of their mother subject to the rights of the defendant which will be set forth in the court's orders.
There is no agreement on the question of overnight visitation. The plaintiff appeared to have vacillated on this, having first testified that she had no objection to an overnight visitation by Katyn with the defendant and then changing her mind. She changed her mind, apparently, because she claims she was receiving or had received harassing phone calls from the defendant the night before she testified. She did not indicate that she had any fear that the defendant would harm either of the children.
There should be no reason for not allowing Katyn to visit with her father overnight at his parents' home at least on a once a month basis. Visiting with Robert on an overnight basis should probably not begin until he is at least a year older.
While the defendant's income does not provide a basis for applying the guidelines, nor does the plaintiff's, both will CT Page 1611 be receiving funds from the sale of the house, and the defendant, at least, has an IRA and a 1987 Ford truck on the sale of which income could be derived. Moreover, according to the defendant's affidavit, he is spending $377.15 each week including his child support. There is no evidence as to the source of that income.
The court has considered all of the provisions of46b-81 and 46b-82 of the Connecticut General Statutes and what is in the best interest of the children with respect to custody and visitation, and makes the following findings and orders on the basis thereof:
1. All of the necessary affidavits concerning finances and custody and the health certificate have been filed.
2. The parties have resided in this state for more than one year before bringing this action, and the court, therefore, jurisdiction.
3. Neither party is or was a recipient of any state aid.
4. The marriage has broken down irretrievably with no hope of reconciliation, and it is hereby dissolved.
5. The plaintiff was at fault for the breakdown of the marriage.
6. The marital home, which is the sole major asset of the parties, presently under a binder for sale shall be sold and the net proceeds divided equally. The net proceeds shall include the balance remaining after the deduction of closing costs, attorney's fees, broker's commission, and the outstanding mortgage due at the time the defendant was ordered to make the payments thereon. The arrearage in the mortgage payments, including penalties and interest, shall be deducted from the defendant's share of the net proceeds and shall not be deducted from the total proceeds of the sale.
7. Each party shall pay the other $1.00 a year alimony for a period of five (5) years.
8. Sole custody of Katyn and Robert is awarded to the plaintiff subject to the reasonable rights of the defendant as hereinafter set forth:
 a. The defendant may visit, in his parents' home, with both children on alternate weekends, either Saturday or Sunday at his option with 48 hours notice to the CT Page 1612 plaintiff of which day he wishes to visit, from 11:00 a.m. until 6:00 p. m. In addition, one of those weekends a month the defendant may have Katyn visit for an entire weekend from Saturday at 12:00 noon until Sunday at 6:00 p. m.
 b. In addition to these weekend visits, the defendant may visit both of the children one evening a week from 4:00 p. m. to 7:00 p. m. at his parents' home or at some other place agreed to by both parties.
 c. The plaintiff shall consult with the defendant with respect to all matters concerning the health, welfare and education of the children. She shall notify the defendant of the names of the doctors and other caretakers of the children, other than her parents, and shall advise him of the whereabouts of the children when they are not in the plaintiff's residence.
 d. The defendant shall have the right to telephone the plaintiff four times a week at hours which do not interfere with the sleeping schedules of the children or of the plaintiff. He may, on those occasions, talk with Katyn and with Robert, when he is old enough and able to talk on the phone.
 e. The defendant shall have full access to any medical, hospital or school records of the children and may consult with doctors, teachers, therapists and anyone else caring for the children. Before making any major decisions with respect to the day care of the children school selection and medical needs, plaintiff shall consult with the defendant.
 f. The defendant shall pay the plaintiff the sum of $100.00 per week for the two children, that is, $50.00 per child. In the event that he has no earnings from which he may pay this amount, he shall pay it from his IRA until such time as he has sufficient earnings. During the period he is using the IRA for this purpose, he may not use it for any other purpose.
9. The defendant shall provide a life insurance policy in the amount of $50,000.00 naming the children as irrevocable beneficiaries, and a copy of such policy shall be sent to the plaintiff together with any renewals thereof.
10. Each party shall be responsible for the bills listed in his or her financial affidavit.
CT Page 1613 11. If the parties are unable to agree on the disposition of the personal effects, including furnishings in the marital home, the matter may be referred to Family Relations for a determination.
12. Each party shall be jointly and severally liable for payment of counsel fees for the children in the amount submitted by Attorney Rosenberg, which the court finds to be reasonable.
13. Each party shall be responsible for his or her own counsel fees.
14. Both parties shall be jointly and severally liable for the medical expenses of their children and shall share equally in the payment therefore. When the plaintiff returns to work, she may provide such insurance through her employment and any expense she is required to make for it as well as any uninsured medical, dental, hospital, orthopedic, psychiatric or psychological expenses for the children shall be shared equally by the parents.
15. A contingent wage execution shall issue against the defendant to guarantee the payment of the support order and the alimony.
Judgment shall issue in accordance with the foregoing.
MARGARET C. DRISCOLL STATE TRIAL REFEREE